SAHARA HOTEL & CASINO, Appellant, *v.*
PATRICIA HOLDEN, Respondent.

No. 28395

February 26, 1998                953 P.2d 268

*Moran & Associates* and *Jill M. Lynne,* Las Vegas, for Appellant.

*Michael Paul Wood,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

In this workers' compensation case, Patricia Holden developed
a debilitating condition in her left hand as a result of her employ-
ment at the Sahara Hotel and Casino ("the Sahara"). Ms. Holden
also suffered from a number of other serious ailments, not attrib-
utable to her employment, which eventually led to her residence
in a nursing home. The Sahara, a self-insured employer, paid Ms.

Holden some workers' compensation benefits, but rejected her claim for retroactive temporary total disability benefits and offered her an apportioned permanent partial disability benefit. Ms. Holden appealed to the State Industrial Insurance System ("SIIS"). During the course of litigating her claims before the Department of Administration ("the Department") hearing officer, Ms. Holden died as a result of her non-industrial-related ailments. Although Ms. Holden left no dependents, her heirs[1] continued to litigate her claims in her name.

The Department, which was unaware of Ms. Holden's death, rejected her contested claims on their merits, and Ms. Holden's heirs appealed to the district court for judicial review. The Sahara filed a motion to dismiss on the ground that Ms. Holden's non-dependent heirs have no legal basis to succeed to her workers' compensation claim and that her claim is therefore moot. The district court rejected the motion to dismiss and reversed the decision of the Department, thereby, in effect, ordering the payment of workers' compensation benefits to Ms. Holden's non-dependent heirs. The Sahara contends that this was error. We agree.

The workers' compensation laws were enacted as a humanitarian measure designed to protect injured persons and those dependent upon a deceased worker's income. *See generally,* Industrial Commission v. Peck, 69 Nev. 1, 10-11, 239 P.2d 244, 248 (1952). In fact, the word "compensation" is defined in the workers' compensation statutes as "the money which is payable *to an employee or to his dependents.*" NRS 616A.090. (Emphasis added.)[2] In light of the recognized purpose of the workers' compensation scheme stated above, and the absence of any express language creating a right of survivorship in favor of non-dependent heirs, we see no reason to deviate from a literal construction of the definition of "compensation" provided by the legislature. Authorization for the payment of workers' compensation benefits to non-dependent persons must come from the legislature and not from this court.[3]

---

[1] The late Ms. Holden's claim is apparently being pursued by her adult sons, none of whom claims to have been financially dependent upon Ms. Holden at the time of her industrial injury.

[2] *See also* NRS 616C.205 which provides, in pertinent part:

> In the case of the death of an injured employee covered by this chapter from causes independent from the injury for which compensation is payable, any compensation due the employee which was awarded or accrued but for which a check was not issued or delivered at the date of death of the employee is payable to his dependents. . . .

[3] Nevada's policy of denying workers' compensation benefits to non-dependent heirs is consistent with that in other jurisdictions. *See, e.g.,* Riley

Because there is no longer an authorized beneficiary to whom Ms. Holden's workers' compensation benefits may be paid, we vacate the order of the district court.[4]

v. National Mills Inc., 873 P.2d 214, 217-219 (Kan. Ct. App. 1994); Trice v. Tektronix, Inc., 801 P.2d 896 (Or. Ct. App. 1990) (It is a legitimate state objective to see that an injured worker and heirs dependent upon the worker for their support and maintenance will not become burdens upon the public, but no such objective exists as to the heirs who were not dependent upon the worker.).

[4]Holden's heirs contend that the doctrine of laches prevents the Sahara from denying benefits to Ms. Holden's heirs. *See* Building & Constr. Trades v. Public Works, 108 Nev. 605, 836 P.2d 633 (1992) (Laches is an equitable doctrine which may be invoked when inexcusable delay by a party works to the disadvantage of the other, causing a change of circumstances which would make the grant of relief to the delaying party inequitable.). Specifically, the heirs accuse the Sahara of bad faith in "delaying the payment of benefits to a point in time beyond the life of its insured." We conclude that any delay was the result of a legitimate and good faith dispute over Ms. Holden's entitlement to benefits in light of her debilitating non-industrial ailments. Accordingly, this is simply not a case where equitable intervention is warranted.